# UNITED STATES DISTRICT COURT
## for the
## District of Arizona

| | |
|---|---|
| United States of America | ) <br> ) No. 25-4387 MJ CDB <br> ) <br> ) CRIMINAL COMPLAINT <br> ) <br> ) |
| v. | |
| 1. Nizhoni Gonzales <br> 2. Jed Crooke <br> 3. Delbert Hyden | |

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

**Count 1:** On or about September 5, 2025, in the District of Arizona, within the confines of the Navajo Nation Indian Reservation, Indian Country, the defendants, NIZHONI GONZALES, JED CROOKE, and DELBERT HYDEN, Indians, did intentionally and knowingly assault the victim, W.M., with a dangerous weapon, that is, a firearm, with the intent to do bodily harm.

In violation of Title 18, United States Code, Sections 1153, 113(a)(3), and 2.

**Count 2:** On or about September 5, 2025, in the District of Arizona, within the confines of the Navajo Nation Indian Reservation, Indian Country, the defendants, NIZHONI GONZALES, JED CROOKE, and DELBERT HYDEN, Indians, did intentionally, knowingly, and recklessly assault the victim, W.M., resulting in serious bodily injury.

In violation of Title 18, United States Code, Sections 1153, 113(a)(6), and 2.

**Count 3:** On or about September 5, 2025, in the District of Arizona, within the confines of the Navajo Nation Indian Reservation, Indian Country, the defendants, NIZHONI GONZALES, JED CROOKE, and DELBERT HYDEN, Indians, did unlawfully seize, confine, and kidnap the victim, Jane Doe, and hold the victim for any purpose.

In violation of Title 18, United States Code, Sections 1153, 1201(a), and 2.

**Count 4:** On or about September 5, 2025, in the District of Arizona, the defendants, NIZHONI GONZALES, JED CROOKE, and DELBERT HYDEN, did knowingly use, carry, and brandish a firearm during and in relation to a crime of violence and did knowingly use, possess, and brandish the firearm, in furtherance of a crime of violence, that is CIR-Assault With a Dangerous Weapon as alleged in Count 1, a felony crime prosecutable in a Court of the United States.

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

**CC: USM & PTS**

I further state that I am a Special Agent from the Federal Bureau of Investigation and that this complaint is based on the following facts:

**See Attached Affidavit Incorporated By Reference Herein.**

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

AUTHORIZED BY: *WVL* W. Vinnie Lichvar, AUSA

CATHERINE SCOTT
Digitally signed by CATHERINE SCOTT
Date: 2025.09.07 14:52:13 -07'00'

Signature of Complainant

Catherine Scott, Special Agent – FBI
Printed Name and Title

Telephonically sworn.

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2025.09.07 17:33:20 -07'00'

Judge's Signature

Date: _____

City and State: Flagstaff, Arizona

Hon. Camille D. Bibles, U.S. Magistrate Judge
Printed Name and Title

## STATEMENT OF PROBABLE CAUSE

I, Catherine Scott, a Special Agent with the Federal Bureau of Investigation, being duly sworn, hereby depose and state the following:

## INTRODUCTION AND BACKGROUND OF AFFIANT

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since September of 2022. I am currently assigned to the FBI Resident Agency (RA) in Flagstaff, Arizona. In the course of my official duties, I am charged with the investigation of violent crimes occurring on the Navajo Nation and Hopi Indian reservations within the District of Arizona. Throughout my career as a law enforcement officer, I have received significant training and experience in various law enforcement disciplines, including interviews, processing crimes scenes, and evidence collection. I am an investigative law enforcement officer of the United States, and I am empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18 of the United States Code. Based on my training, education, and experience, I know that the Navajo Nation and Hopi Indian tribes are federally recognized tribes.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested Complaint and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

3. On September 5, 2025, at approximately 9:39p.m., a Navajo Nation Criminal Investigator (CI) contacted the FBI Flagstaff RA and stated that there had been a home invasion, assault, and child abduction in Tuba City, Arizona. The CI stated that Nizhoni Gonzales, her boyfriend, Delbert Hyden, and a third unidentified male (later identified as Jed Crooke) went to

the residence of W.M. and K.T. The CI stated that Nizhoni, Delbert, and Jed forced their way into the residence with a long gun (possibly a shotgun), and assaulted W.M., which caused multiple lacerations to his face. The CI stated that Nizhoni took Jane Doe and left the residence with Delbert and Jed. The CI stated that the subjects had discharged a firearm during the incident. The CI stated that W.M. was at the Tuba City Regional Health Care Center receiving treatment for his injuries.

    4.    Nizhoni is the biological mother of Jane Doe. However, on August 18, 2025, an order from the Navajo Nation Judicial District of Tuba City, Arizona, had granted temporary legal and physical custody of Jane Doe to K.T.

    5.    On September 5, 2025, the Navajo Nation CI interviewed K.T.'s mother, E.B. During her interview, E.B. stated that K.T. called her earlier that evening and asked her to take care of Jane Doe. E.B. agreed to watch the baby and proceeded to K.T.'s trailer. She stated that K.T.'s boyfriend, W.M., later returned to the trailer after dropping K.T. off at work. She stated that while W.M. was making milk for Jane Doe, there was a knock at the door. She stated that several individuals rushed into the residence, including her granddaughter, Nizhoni Gonzales. She stated that Nizhoni picked up the baby and began carrying her around the inside of the trailer. E.B. stated that the individuals who entered the trailer rushed toward W.M. and began assaulting him. She stated that the attack happened very quickly. She noted that one of the men was carrying a gun, which she described as a long gun. She believed that this gun was used to strike W.M. E.B. stated that she left the residence while the assault was occurring. She stated that while she was outside, she could hear W.M. yelling inside the trailer. E.B. stated that she did not see what type of vehicle Nizhoni and the two males arrived in and believed that they had parked at a distance from the residence. E.B. described one of the men as taller and stated they both appeared to be Navajo. E.B. stated that she heard a gun discharge while the individuals were still inside the trailer.

6.      On September 5, 2025, the Navajo Nation CI interviewed T.B., who resided next door to K.T. During this interview, T.B. stated that he was inside the bedroom when he heard Nizhoni calling out. Nizhoni told T.B. to go inside K.T.'s trailer and retrieve a bottle for her baby. T.B. stated that he declined and immediately told his family to go back inside for their safety. T.B. stated that he saw one big male come out of K.T.'s trailer, followed by a second, younger and smaller male who was bald and holding a rifle. T.B. described the younger male as being short and skinny, and noted that he was wearing dark clothing. T.B. stated that the bigger male was wearing shorts and noted that he had a bandana over his face. He stated that the bigger male had long, bushy hair. T.B. stated that the short, skinny male with the rifle appeared to be intoxicated because he was staggering when he came out of the trailer. T.B. stated that the group's vehicle was already parked halfway down the dirt road. He stated that he heard a single loud gunshot. He emphasized that he only heard one gun shot and believed it was fired after the group had passed the entrance of the property. T.B. stated that he saw Nizhoni walking away with her baby and the two males after the incident.

7.      On September 5, 2025, the Navajo Nation CI interviewed K.T. During the interview, K.T. confirmed that she was the custodial caretaker of Jane Doe based on a tribal court decision in August of 2025. She stated that the biological mother, Nizhoni Gonzalez, had previously lost custody of Jane Doe due to Child Protective Services intervention and was required to undergo counseling before regaining visitation rights. K.T. stated that she was not present during the incident. K.T. noted that Jane Doe needed oxygen support and had specialized feeding requirements.

8.      On September 5, 2025, FBI agents interviewed Nizhoni.[1] When FBI agents arrived

---

[1] Nizhoni Gonzales is an enrolled member of the Navajo Nation Indian tribe.

on scene, Nizhoni was holding Jane Doe. Nizhoni initially stated that Delbert and another male brought Jane Doe to her. She stated that she has been in an "on and off relationship" with Delbert. Nizhoni initially stated that she did not know the other male. She stated that Delbert and the other male went to get Jane Doe in Delbert's blue Tahoe. She stated that Jane Doe requires a feeding pump and oxygen because she has spina bifida. FBI agents told Nizhoni that she had been identified as being at K.T.'s trailer. Nizhoni then stated, "ok I did it, I came over here." Nizhoni stated that she, Delbert, and the other male, discussed going to K.T.'s trailer to get Jane Doe because Nizhoni believed that Jane Doe was not being cared for. She stated that they went over to K.T.'s trailer to take Jane Doe. Nizhoni identified the males as Delbert "Del" Hyden and "Jed Crooke from the Hopi side."[2]

9.      Nizhoni stated that she walked in the front door of K.T.'s trailer first, and did not know Jed and Delbert were going to "bust through" the door behind her. She stated that she took the baby from the residence and told her grandmother to get out of the trailer. She stated that Delbert and Jed beat W.M. She stated that Delbert had an "AK" style gun that he used to beat W.M. She stated that she did not see or hear any gunshots but noted that she got into the car before Jed and Delbert.

10.     On September 6, 2025, FBI agents interviewed W.M. at the Tuba City Regional Heath Care Center.[3] W.M. stated that he drove K.T. to work the prior evening and asked K.T.'s mother, E.B., to watch Jane Doe. W.M. stated that he had been living with K.T. to help take care of Jane Doe. He stated that after dropping K.T. off at work, he returned to the residence and was

---

[2] Jed Crooke is an enrolled member of the Hopi Indian tribe. Delbert Hyden is an enrolled member of the Navajo Nation Indian tribe.
[3] W.M. is an enrolled member of the Navajo Nation.

preparing to feed Jane Doe. He noted that Jane Doe had to be fed through a nose feeding tube due to medical conditions. W.M. stated that he heard a knock on the door and opened it. W.M. stated that Nizhoni immediately entered the residence. He stated that she walked straight to Jane Doe and picked her up. W.H. stated that he then heard the door get kicked open. He stated that he turned around and saw "Del" with a shotgun. He stated that E.B. got scared and left. W.M. stated that a second male came through the door with a pistol. He stated that he did not know this male but noted that he was wearing a baseball hat and had a bandana covering his face. W.M. stated that the unknown male was about the same height as "Del" with a bigger build.

11.     W.M. stated that he believed the two men were there for K.T. because they continued to ask: "Where is she?" He stated that both males hit him in the face with their weapons. He stated that "Del" used the end of the shotgun to hit him in the face and on the back of the head. He stated that the other male used the pistol to hit him in the face. W.M. stated that he believed he lost consciousness and fell to the ground. He stated that while he was on the ground, they began to kick him. He stated that the two males pointed their guns at him. He stated that at some point, he could not see because there was so much blood. He stated that he felt one barrel of a gun against his head and another against his neck.

12.     W.M. stated that "Del" asked him where his jewelry was. He stated that the other male stated that they should just kill him. W.M. stated that he heard them leave the house. He stated that he then tried to locate his cellphone to call the police, but he could not see because of all the blood. He stated that he tried to wash his face off. W.M. stated that he then heard what sounded like two gunshots in the front yard. W.M. stated that he eventually walked outside and did not see anyone. W.M. stated that they had taken Jane Doe.

13.     W.M. stated that he drove himself to the emergency room at the Tuba City Regional

Heath Center. He described the pain while he was being assaulted as a 10 on a scale from 1-10. W.M. received multiple staples and stitches to his face and head. He was advised that he had received a concussion.

14. On September 6, 2025, investigators found two ammunition casings outside K.T.'s trailer. One shell casing had an imprinted caliber of 380. The second shell casing had an imprinted caliber of 9mm.

15. On September 6, 2025, FBI agents drove by the residence where Jed is known to reside in Moenkopi, Arizona, on the Hopi reservation. The agents observed a dark blue SUV matching the description provided by Nizhoni parked at the residence.

## CONCLUSION

16. Based on the facts and circumstances stated in this Affidavit, I submit there is probable cause to believe that the defendants, NIZHONI GONZALES, JED CROOKE, and DELBERT HYDEN, committed the offenses of CIR-Assault With a Dangerous Weapon, Aid and Abet, CIR-Assault Resulting in Serious Bodily Injury, Aid and Abet, Use of a Firearm During a Crime of Violence, Aid and Abet, and Kidnaping, Aid and Abet, in violation of Title 18, United States Code, Sections 1153, 113(a)(3), 113(a)(6), 924(c)(1)(A), 1201, and 2.

**Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.**

CATHERINE SCOTT
Digitally signed by CATHERINE SCOTT
Date: 2025.09.07 14:53:20 -07'00'

Catherine Scott
Special Agent, FBI

September 7, 2025
Date

Telephonically sworn on this 7th day of September 2025.

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2025.09.07 17:33:00 -07'00'

Honorable Camille D. Bibles
United States Magistrate Judge